***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, the Commission has jurisdiction of the parties and of the subject matter of this action, and the parties are bound by the provisions of the Worker's Compensation Act.
2. At all times relevant hereto, and particularly on May 29, 2003, the date of the alleged injury herein, the relationship of employee and employer existed between James Earl Chaplin and Koury Corporation.
3. All parties have been correctly designated.
4. Selective Insurance Company is the carrier on this claim.
5. The date of the alleged injury by accident is May 29, 2003. Defendants deny that plaintiff's injuries are the result of any work-related cause.
6. As of May 29, 2003, plaintiff contends that his average weekly wage was $564.82, giving rise to a compensation rate of $376.57. Defendants have objected to this figure.
7. Plaintiff has not returned to work for defendant-employer since his injury on May 29, 2003.
8. Defendants have denied plaintiff's disability was the result of any work-related cause on IC Form 61, dated June 17, 2003.
9. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of Industrial Commission forms.
10. The parties stipulated into evidence as Stipulated Exhibit 2, plaintiff's medical records.
11. The parties stipulated into evidence as Stipulated Exhibit 3, plaintiff's medical bills.
12. The parties stipulated into evidence as Stipulated Exhibit 4, defendants' responses to discovery.
13. The parties stipulated into evidence as Stipulated Exhibit 5, plaintiff's job search records.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was 51 years old, born December 7, 1952. Plaintiff is a high school graduate. For the 25 years preceding May 29, 2003, plaintiff was employed in construction work.
2. Plaintiff became employed with defendant-employer on February 3, 2003 working as a carpenter. He did not miss any days from work until his injury on May 29, 2003 with the exception of one day for a February ice storm. Plaintiff arrived promptly for work daily and was able to perform all his assigned job duties including lifting siding. Plaintiff's job duties with defendant-employer involved primarily changing siding on the outside of apartments which weighed approximately 65 pounds which plaintiff occasionally lifted with help and occasionally lifted alone.
3. At age 17, plaintiff was involved in a motorcycle accident and had extensive surgery on both knees. Plaintiff also suffered two fractions of his left femur, which required surgery. Plaintiff also broke his ribs and hurt his neck.
4. On May 29, 2003, as plaintiff was going down a stairwell he missed the first step, and fell down approximately thirteen concrete steps.
5. Thereafter, plaintiff immediately reported his injury to his supervisor, Mr. Leonard, and was taken to the emergency room at Moses Cone Hospital. When he reported this injury to his supervisor, he was complaining primarily of groin and shoulder pain.
6. Prior to plaintiff's fall, plaintiff had difficulty getting around and was stiff and slow moving.
7. Immediately after plaintiff's fall, he felt pain in his left arm and shoulder, back, neck and left knee. Plaintiff also experienced groin pain. Plaintiff had not had groin pain previously, and never had a knot or bulging in that area.
8. At the emergency room, tests were performed on plaintiff and no bruising or swelling was observed. Plaintiff was given a pain killer and muscle relaxer and referred to Dr. James Applington, an orthopaedic surgeon.
9. On June 3, 2003, plaintiff presented to Dr. Applington and again had no evidence of bruising or swelling in the knee, shoulder or elsewhere. When plaintiff presented to Dr. Applington, he was complaining of left shoulder pain, left scapular area pain, pain in both knees and numbness in the left arm from the elbow to the fingers. Plaintiff did not make any complaints of neck, groin or head pain. On June 3, 2003, Dr. Applington took plaintiff out of work for one week until his next recheck.
10. Plaintiff returned to Dr. Applington on June 10, 2003. Plaintiff was complaining of bilateral knee pain, numbness in the entire left upper extremity and pain in the left scapula area. On that date, plaintiff did not complain of groin pain, neck pain, low back pain or head pain.
11. Dr. Applington was of the opinion that plaintiff's complaints of left upper extremity numbness were non-organic, were not consistent with any particular diagnosis and had a significant amount of non-organic overlay. As to plaintiff's left upper extremity, Dr. Applington was of the opinion that plaintiff's complaints of numbness "just didn't fit into what you consider to be the normal type of person complaining and following an injury who is having problems and just his whole demeanor and clinical picture, just a lot of things that just looked like it was either — it was emotionally based, on whatever the cause."
12. Based upon all of his examinations of plaintiff, Dr. Applington was of the opinion that plaintiff had pre-existing problems in his knees, legs and back, and that although plaintiff may have had some temporary pain related to his fall, he did not materially change, aggravate or accelerate what was there before the accident and should have been back to his pre-injury state within three to six weeks of June 10, 2003. Dr. Applington was basically of the opinion that plaintiff had fairly extensive pre-existing conditions with no severe new injury: that in essence, plaintiff fell down and banged himself up but there was no permanent injury and that plaintiff had psychological overlay.
13. Dr. Applington was further concerned that plaintiff smelled of alcohol at his first visit based on his observation and the observation of others in his office and that plaintiff may have smelled of alcohol on his second visit and in the opinion of at least one office worker did. Dr. Applington was further of the opinion that plaintiff reported intolerance for Vioxx and request for additional Hydrocodone was of concern.
14. On June 26, 2003, plaintiff presented to the emergency room of Forsyth Medical Center complaining of back pain and a hernia and received painkillers. On July 9, 2203, plaintiff presented at the emergency room of Baptist Hospital complaining of back and leg pain where he received pain killers and was referred to Dr. Russell Howerton for his hernia. On July 27, 2003, plaintiff presented to the Moses Cone emergency room complaining of cramps in his shoulders and low back and received painkillers.
15. Dr. Applington did refer plaintiff for an MRI of the shoulder to determine whether or not he had injured his shoulder at the time of his fall. Defendants denied this MRI.
16. On July 30, 2003, plaintiff presented to Dr. Russell Howerton, a board-certified general surgeon, for an intermittent bulge in the left inguinal region since his May 29, 2003 fall. Dr. Howerton diagnosed plaintiff with a left inguinal hernia and recommended a laparoscopic inguinal hernia repair. Dr. Howerton was unable to state to a reasonable degree of medical certainty whether plaintiff's hernia was caused or aggravated by his fall on May 29, 2003 and was of the opinion that it could have equally likely have been caused by plaintiff's fall or not. He was of the opinion that it is not a common cause for people to develop inguinal hernias as a result of a fall.
17. On August 6, 2003, plaintiff presented to Wake Forest Adult Medicine Clinic and was treated by Jerry Hopping, a licensed physician's assistant. Plaintiff presented complaining of numbness in his left arm and back pain that was radiating primarily into his left leg and occasionally into both legs. Plaintiff was tender wherever Mr. Hopping touched and had no detectable muscle spasms. At that time, Mr. Hopping was of the opinion that plaintiff was unable to work for the next 60 days until an orthopaedic evaluation. He thereafter referred plaintiff for an orthopaeidc evaluation.
18. An August 27, 2003 MRI of plaintiff's lumbar spine revealed multi level spondylatic changes, especially at L4-5 with severe canal stenosis and mild bilateral foraminal stenosis.
19. Plaintiff returned to Mr. Hopping on September 16, 2003 continuing to complain of back pain which radiated into his legs, chronic knee pain and pain in his left shoulder with numbness in the palms of his hands. At this visit, plaintiff was prescribed Darvocet and cautioned not to use alcohol with pain medicine.
20. On October 13, 2003, plaintiff returned to Mr. Hopping for a final visit continuing to complain of the same problems and not experiencing any relief. At that time plaintiff was referred for a MRI of the cervical spine and continued out of work. Plaintiff was taken off Darvocet and placed on Tylenol 3.
21. Mr. Hopping was of the opinion that plaintiff's back pain and pain radiating into the legs was caused by plaintiff's pre-existing spinal stenosis.
22. Mr. Hopping was of the opinion that plaintiff's spinal stenosis was not caused by the fall but that some of plaintiff's discomfort could have been contributed to by his May 29, 2003 fall. Mr. Hopping was also of the opinion that he would have expected that if plaintiff's fall had aggravated his stenosis that plaintiff would have complained of pain in his back during his June 2003 visits to Dr. Applington.
23. On November 5, 2003, plaintiff presented to Dr. Mark Billante, a resident in orthopaedic surgery at Wake Forest University Medical Center. Plaintiff presented complaining of back pain in his cervical and lumbar spine, occasional numbness in his left arm, pain in his left shoulder and pain in his right leg. Plaintiff was treated conservatively with physical therapy and anti-inflammatory drugs.
24. As of January 15, 2003, Dr. Billante released plaintiff to return to work with the only restriction being no heavy lifting.
25. On May 29, 2003, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer when he fell down the stairs.
26. As a direct and proximate result of plaintiff's compensable injury he sustained some minor injury superimposed on significant structural pre-existing orthopaedic problems. Plaintiff did not materially change any condition which he had prior to his fall as a result of his compensable fall.
27. There is insufficient evidence to conclude that the conditions which took plaintiff out of work approximately six weeks after his treatment with Dr. Applington were significantly or materially contributed to by his compensable fall.
28. There is insufficient evidence of record to establish that plaintiff's hernia was caused by his May 29, 2003 fall.
29. Plaintiff is entitled to have defendants pay for the medical treatment which was necessitated by his compensable May 29, 2003 fall, to wit, that treatment received by the Moses Cone Hospital visit on May 29, 2003 and the treatment provided by Dr. Applington including tests and studies which were provided as a result of that treatment.
30. As a direct and proximate result of plaintiff's compensable injury, he was unable to work earning the same wage with defendant-employer or any other employer from the time of his compensable injury on May 29, 2003 until six weeks following his last visit with Dr. Applington on June 10, 2003. At that time, plaintiff had recovered from any minor injuries caused by his compensable fall and any continuing disability was caused by his pre-existing condition.
31. Plaintiff is entitled to have defendants pay temporary total disability compensation to plaintiff from May 29, 2003 and continuing through six weeks following plaintiff's June 10, 2003 visit with Dr. Applington.
32. As plaintiff worked less than 52 weeks preceding his injury and as there was no information regarding a similarly situated employee, the first three methods for determining plaintiff's average weekly wage found in N.C. Gen. Stat. § 97-2 would be unfair to both plaintiff and defendants and cannot be used for determining plaintiff's average weekly wage. Based upon the information contained on a completed Form 22, Wage Chart, plaintiff worked 16.3 weeks prior to his injury, earning a total of $9,359.00. Plaintiff's total wages divided by the number of weeks he worked yields an average weekly wage of $574.17, yielding a compensation rate of $382.79.
33. Plaintiff is entitled to temporary total disability compensation from May 29, 2003 through and including six weeks after June 10, 2003 at a rate of $382.79 per week.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 29, 2003, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer when he fell down the stairs. N.C. Gen. Stat. §97-2(6). As a direct and proximate result of plaintiff's compensable injury he sustained some minor injury superimposed on significant structural pre-existing orthopaedic problems. Plaintiff did not materially change any condition which he had prior to his fall as a result of his compensable fall.
2. There is insufficient evidence to conclude that the conditions which took plaintiff out of work following approximately six weeks after his treatment with Dr. Applington were significantly or materially contributed to by his compensable fall. N.C. Gen. Stat. § 97-2(6).
3. There is insufficient evidence of record to establish that plaintiff's hernia was caused by his May 29, 2003 fall. N.C. Gen. Stat. §97-2(6).
4. Plaintiff is entitled to have defendants pay for the medical treatment which was necessitated by his compensable May 29, 2003 fall, to wit, that treatment received by the Moses Cone Hospital visit on May 29, 2003 and the treatment provided by Dr. Applington including tests and studies which were provided as a result of that treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
5. As a direct and proximate result of plaintiff's compensable injury, he was unable to work earning the same wage with defendant-employer or any other employer from the time of his compensable injury on May 29, 2003 until six weeks following his last visit with Dr. Applington on June 10, 2003. At that time, plaintiff had recovered from any minor injuries caused by his compensable fall and any continuing disability was caused by his pre-existing condition. N.C. Gen. Stat. § 97-29. Plaintiff is entitled to have defendants pay temporary total disability compensation to plaintiff from May 29, 2003 and continuing through six weeks following plaintiff's June 10, 2003 visit with Dr. Applington.
6. As plaintiff worked less than 52 weeks preceding his injury and as there was no information regarding a similarly situated employee, the first three methods for determining plaintiff's average weekly wage found in N.C. Gen. Stat. § 97-2 would be unfair to both plaintiff and defendants and cannot be used for determining plaintiff's average weekly wage. Based upon the information contained on a completed Form 22, Wage Chart, plaintiff worked 16.3 weeks prior to his injury, earning a total of $9,359.00. Plaintiff's total wages divided by the number of weeks he worked yields an average weekly wage of $574.17, yielding a compensation rate of $382.79. N.C. Gen. Stat. § 97-2(5). Plaintiff is entitled to temporary total disability compensation from May 29, 2003 through and including six weeks after June 10, 2003 at a rate of $382.79 per week.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall, subject to the attorney's fee in Paragraph 2, pay plaintiff temporary total disability benefits in the amount of $382.79 per week from May 29, 2003 through six weeks following June 10, 2003.
2. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 is hereby approved and shall be deducted by defendants and paid directly to plaintiff's counsel by forwarding every fourth check.
3. Defendants shall pay for the medical treatment required by plaintiff's compensable fall including the emergency room treatment by Moses Cone on May 29, 2003 as well as the treatment provided by Dr. Applington.
4. Defendants shall pay the costs.
This the 12th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER